# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ] | |
| ] | |
| ] | |
| **v.** ] | **7:22-cr-272-ACA-NAD-1** |
| ] | |
| **DARRYL LEE CHANDLER,** ] | |
| ] | |
| **Defendant.** ] | |

## ORDER

Defendant Darryl Lee Chandler moved to suppress evidence and statements he made after a search of his person, and a magistrate judge held a hearing and issued a report recommending that the court deny the motion. (Docs. 27, 38). In the report and recommendation, the magistrate judge found that Officer Jason Siebert stopped the car Mr. Chandler was driving for failure to signal and having a switched tag. (Doc. 38 at 11–12). Mr. Chandler, who did not own the car, appeared nervous and defensive. (*Id.* at 15–16). He disclosed that he had his wife's phone, whom he was divorcing because she had cheated on him, and that he was on his way to see her. (*Id.* at 17). After Mr. Chandler provided Officer Siebert his driver's license and insurance, Officer Siebert asked Mr. Chandler to step out of the car. (*Id.* at 15, 18). When Mr. Chandler got out of the car, Officer Siebert told him to face the car so he could get everything out of Mr. Chandler's pockets. (Doc. 38 at 18). Mr. Chandler

responded that he had a gun. (*Id.*). Officer Siebert then patted Mr. Chandler down and seized the gun. (*Id.* at 19).

The magistrate judge recommended denying the motion to suppress on the grounds that (1) Officer Siebert ordered Mr. Chandler to get out of the car because of legitimate safety concerns and (2) Officer Siebert had independent reasonable suspicion to investigate other criminal activity, including whether the car was stolen and whether Mr. Chandler was involved in a domestic dispute with his wife. (*Id.* at 20–30). Mr. Chandler objects to both of those recommendations. (Doc. 39). First, Mr. Chandler contends that Officer Siebert could not have had legitimate safety concerns because Mr. Chandler was compliant with all of Officer Siebert's directions, Officer Siebert did not smell alcohol or drugs, Mr. Chandler had denied having any drugs or firearms in the car, Officer Siebert knew that the car belonged to the girlfriend of someone else in the car, and the record refutes Officer Siebert's testimony that Mr. Chandler was acting nervous and defensive. (*Id.* at 4–6).

The court **OVERRULES** Mr. Chandler's first objection. The magistrate judge found that Officer Siebert was "fully credible" except for his testimony about whether and when he read a note that Mr. Chandler said he had written to his wife. (Doc. 38 at 11). In general the court is bound by a magistrate judge's credibility determinations unless the court rehears disputed testimony. *Amlong & Amlong, P.A. v. Denny's Inc.*, 500 F.3d 1230, 1250 (11th Cir. 2007) ("[A] district court may not

override essential, demeanor-intensive fact finding by a magistrate judge without hearing the evidence itself or citing an exceptional justification for discarding the magistrate judge's findings."); *United States v. Cofield*, 272 F.3d 1303, 1306 (11th Cir. 2001). The only basis Mr. Chandler offers for disregarding the magistrate judge's credibility finding is that the video evidence "refutes" Officer Siebert's testimony. (Doc. 39 at 5). But to the contrary, except for a few seconds, Officer Siebert's bodycam is pointing down at the door of the car instead of at Mr. Chandler. Moreover, the video captures Mr. Chandler interrupting Officer Siebert and Officer Siebert telling Mr. Chandler to "calm down." Mr. Chandler has not presented any argument persuading the court to rehear the testimony or reject the magistrate judge's finding.

Officer Siebert's testimony about the behavior of the occupants of the car before he pulled them over, his status as the only officer in the area, his knowledge of the other two occupants of the car, and Mr. Chandler's behavior during the stop all support the magistrate judge's recommendation to find that Officer Siebert justifiably ordered Mr. Chandler to step out of the car based on safety concerns. *See Pennsylvania v. Mimms*, 434 U.S. 106, 109–11 (1977) (holding that the "incremental intrusion resulting from the request to get out of the car once the vehicle was lawfully stopped" was lawful because the interest in protecting an officer's safety "is both legitimate and weighty"). Mr. Chandler has not persuaded that court that Officer

3

Siebert's order was pretext for prolonging the stop to conduct some other investigation. *Cf. Rodriguez v. United States*, 575 U.S. 348, 356 (2015) ("Traffic stops are especially fraught with danger to police officers, so an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely. On-scene investigation into other crimes, however, detours from that mission. So too do safety precautions taken *in order to facilitate* such detours.") (cleaned up) (emphasis added).

The court also **OVERRULES** Mr. Chandler's second objection. Mr. Chandler contends that Officer Siebert did not have reasonable suspicion to investigate other criminal activity. (Doc. 39 at 6–9). According to Mr. Chandler, Officer Siebert could not have reasonably suspected the car was stolen because he never asked if the car was stolen, never ran the car's VIN, and other occupants of the car admitted the car belonged to a friend. (*Id.* at 7). The court disagrees. First, the court will not waste time addressing why the statements by Mr. Chandler and his friends are insufficient proof that the car was not stolen. The fact that the occupants provided information about the car's possible owner does not dissipate Officer Siebert's reasonable suspicion about the car's switched tag. Second, Officer Siebert did not have the time to run the VIN or see if the car was reported stolen. Officer Siebert asked Mr. Chandler to get out of the car within the first thirty seconds of pulling him over. Sixteen of those first thirty seconds involved acknowledging the

car's other occupants and explaining to Mr. Chandler how they knew each other. Another two minutes involved further attempts to explain the purpose of the stop and the fact that the tag belonged to some else, while simultaneously addressing interruptions, questions, and discussions about unrelated issues by Mr. Chandler and the vehicle's other occupants. Officer Siebert spent the final minute trying to convince Mr. Chandler to "do this right" by getting out of the car. In light of these circumstances, Officer Siebert did not have time to ask questions regarding the ownership of the car or search its VIN number prior to asking Mr. Chandler to step out of the car. Based on the switched tag and Officer Siebert's testimony about the connection between switched tags and stolen vehicles, plus the behavior of the occupants of the car both before and during the stop, Officer Siebert had reasonable suspicion to investigate whether the car was stolen. *See United States v. Campbell*, 26 F.4th 860, 884 (11th Cir. 2022) (en banc) ("[T]o unlawfully prolong, the officer must (1) conduct an unrelated inquiry aimed at investigating other crimes (2) that adds time to the stop (3) without reasonable suspicion."); *see also United States v. Braddy*, 11 F.4th 1298, 1308 (11th Cir. 2021) ("To justify [a traffic stop], however, officers need only reasonable suspicion—that is, a particularized and objective basis for suspecting the particular person stopped of breaking the law.") (quotation marks omitted).

Mr. Chandler also takes issue with Officer Sieber's testimony that he prolonged the stop because he suspected a "domestic dispute." (Doc. 39 at 7–8; *see also* doc. 35 at 40). The court agrees that suspicion of a "domestic dispute" between spouses would not provide a ground to prolong a stop. The court therefore **SUSTAINS** that objection. But other grounds—Officer Sieber's safety precaution and the reasonable suspicion that the car was stolen—support the magistrate judge's determination that the officer did not unlawfully prolong the stop. Accordingly, the court **ADOPTS** the report except as to the finding that reasonable suspicion that Mr. Chander was involved in a "domestic dispute" permitted prolonging the stop. The court **ACCEPTS** the recommendation to deny the motion to suppress and **DENIES** the motion.

From the date of entry of this order, only a few days remain on the speedy trial clock. This motion would have been dispositive of the case had Mr. Chandler succeeded in suppressing the evidence seized. As a result, it is unreasonable to presume defense counsel continued preparing for the trial during the pendency of the motion. And it is not reasonable for the court to order that defense counsel finish preparing for trial within the next few days. Accordingly, the court finds that the interest of justice outweighs the public's and Mr. Chandler's interests in a speedy trial. *See* 18 § 3161(h)(7)(A). The court **CONTINUES** the trial date for thirty days and **SETS** the trial for October 30, 2023.

**DONE** and **ORDERED** this October 4, 2023.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE